UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


CHERYL A. WHITE,                                                        PLAINTIFF


v.                                        CIVIL ACTION NO. 3:14-CV-00645-CRS


COVENTRY HEALTH & LIFE INS. CO., et al                          DEFENDANTS

## <u>MEMORANDUM OPINION</u>

Cheryl White sued Coventry Health and Life Insurance Company ("Coventry"), Lisa Chandler, Jennifer Hatchett, and Deborah Pennington (together, the "Coventry Defendants") in Jefferson Circuit Court. *See* Am. Compl. 1, ECF No. 12. The Coventry Defendants removed and moved to dismiss. Notice Removal 1 – 7, ECF No. 1; Mot. Dismiss 1 – 6, ECF No. 2.

This Court granted White leave to amend the complaint and denied the Coventry Defendants' motion to dismiss as moot. Mem. Op. & Order 3, ECF No. 11. The amended complaint names the Coventry Defendants, Belinda Lonergran,[1] and Patrick Murray as defendants.

The Coventry Defendants again moved to dismiss White's complaint. Defs.' Mot. Dismiss 1, ECF No. 14. Before the Court addresses the motion to dismiss, the Court addresses White's two motions for extension of time.

For the reasons below, the Court will grant White's second motion for extension of time and deny as moot White's first motion for extension of time. The Court will grant the Coventry Defendants' motions to dismiss all claims.

---

[1] The Coventry Defendants point out that the complaint misspells Belinda Lonergran's name. Defs.' Mem. Supp. Mot. Dismiss 3 n.8, ECF No. 14-1.

## I.      White's Motions for Extension of Time

White and the Coventry Defendants agreed that to extend White's time to file a response to the motion to dismiss until May 15, 2015.  *See* Agreed Order 1, ECF No. 16.  On May 16, White filed a response.  Pl.'s Resp. Defs.' Mot. Dismiss, ECF No. 17.

On June 1, White moved for an extension of time to file a response to the Coventry Defendants' motion to dismiss by June 5.  Pl.'s Mot. Extension Time, ECF No. 18.  On June 8, White moved for an additional extension to file a response by June 8.  Pl.'s Mot. Extension Time, ECF No. 20.[2]

Federal Rule of Civil Procedure 6(b) governs motions for extending time:

**Rule 6. Computing and Extending Time; Time for Motion Papers**

(b) **Extending Time**.

(1) ***In General***. When an act may or must be done within a specified time, the court may, for good cause, extend the time: …

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

The Court determines whether there is excusable neglect by balancing five factors:

(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

Here, White moved for an extension after the agreed-upon May 15 deadline passed and after having already filed a response on May 16.  The Coventry Defendants ask this Court to deny the extensions because White improperly seeks to attach supporting documents to the new

---

[2] In the later motions for extension of time, White refers to the May 16 response as a "preliminary" response.  Pl.'s Mot. Extension Time, ECF No. 18, 20.

responses to the motion to dismiss.  Defs.' Resp. Opp. Pl.'s Mot. Extension Time 1 – 2, ECF No. 19, 22.

In considering White's motion to extend time after the time has expired, the Court considers whether there was excusable neglect.  As detailed below in the discussion of response's superfluous facts, the additional documents attached to the response, and this Court's rulings on the motion to dismiss, the danger of prejudice to the Coventry Defendants in granting an extension of time is nonexistent.   Additionally, the length of the delay was less than one month.  Given that the Coventry Defendants filed a timely reply in support of the motion to dismiss on June 19, the delay had little impact on this judicial proceeding.   White cites the reason for the delay as the inability to obtain documents from the Plaintiff, staff turnover, and computer "network malfunctions." Pl.'s Mot. Extension Time, ECF No. 20.  While the delay may have been within the reasonable control of White's counsel, the Court has no reason to believe that White asked for the extensions in bad faith.

This Court prefers to adjudicate cases on the merits rather than procedural technicalities. *See Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003).  The Court will grant White's second motion for extension of time and will deny the first motion as moot.

## II.   Coventry Defendants' Motion to Dismiss

A plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint "does not need detailed factual allegations," but a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Ultimately, the complaint must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

This Court assumes the veracity of well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This Court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* This Court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A "naked assertion" without "further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In evaluating a motion to dismiss for failure to state a claim, this Court does not consider facts or additional documents included in a response to a motion to dismiss that are not in the pleadings. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997); *Excel Homes v. Locricchio*, 7 F.Supp. 3d 706, 710 (E.D. Mich., 2014) ("Defendants are correct. When adjudicating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must not consider matters outside of the pleadings."); *Bank of America, N.A. v. Corporex Realty & Inv., LLC*, 875 F.Supp. 2d 689, 698 (E.D. Ky. 2012) ("Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings.")

White's response[3] includes many factual allegations that are not in the amended complaint. *See, e.g.*, Pl.'s Resp. Defs.' Mot. Dismiss, ECF No. 21 (detailing White's job responsibilities as Network Operations Manager). White also attached supporting documents that were not attached to the amended complaint. *See* Pl.'s Resp. Defs.' Mot. Dismiss Exs. A – E, ECF No. 21-2 – 21-5.

This Court will not consider the factual allegations asserted in White's response nor the documents attached to White's response in evaluating whether White's complaint states a claim to relief that is plausible on its face.

---

[3] The Court refers to the June 8 response as "White's response."

### III.    <u>Factual Allegations</u>

This Court assumes the veracity of the following well-pleaded factual allegations:

In 2011, White began work at Coventry as a Network Operations Manager.[4]  Am. Compl. ¶ 19, ECF No. 12.  White had knowledge and experience with Carelink's Medicaid health benefits.  *Id.*  White is a woman, a native Hawaiian, and over the age of fifty.  *Id.* ¶ 16.

On September 28, 2012, White received an email from Lisa Chandler who chastised her for missing a meeting.  *Id.* ¶ 21.  White was unsure whether her presence was needed at the meeting.  *Id.*  White's white male counterpart, younger employees, and non-minority employees did not receive similar emails when they missed meetings.  *Id.*

On October 23, White filed a workers' compensation claim.  *Id.* ¶ 23.  After she filed the claim, she received complaints regarding missing Provider Medicaid ID numbers and the strength of the perfume she wore daily.  *Id.* ¶ 24.

On December 10, White met with Gary Fletcher, a vice president at Coventry, who told her "that if she wanted to apply for a different position, she had to do it before she was written up for alleged[ly] not living up to expectations."  *Id.* ¶ 25.  During this meeting, Fletcher and White "discussed the problem areas in her department, and how her alleged lack of understanding of the department caused ripple effects."  *Id.* ¶ 27.  White asked Fletcher why she had not been fired.

---

[4] The complaint says that White applied for work at Coventry in the fall of 2011 and began work on October 21, 2012.  *Id.* ¶ 19.  Then, the complaint describes an email White received on September 28, 2012 for missing a meeting.  *Id.* ¶ 21.  It appears that the October 21, 2012 start date is a typographical error and that White began work on October 21, 2011.

However, assuming *arguendo* that White received an email chastising her about missing a meeting before her start date at Coventry, the result is the same.  White does not argue that the September 28, 2012 email was an adverse employment action for purposes of her disparate-treatment claim.  *See* Pl.'s Resp. Defs.' Mot. Dismiss 12, ECF No. 21.  Instead, White argues that the adverse employment actions for the disparate-treatment claims include significantly diminished material responsibilities, reassignment, and "badgering harassment, or humiliation by Defendant Coventry, and ultimately her constructive discharge."  *Id.*  The Court will address these allegations.  *See* discussion *infra* Parts IV(C) and IV(D).

*Id.* ¶ 28.  Fletcher responded, "We can't fire you.  The company (Defendant Coventry) is afraid of being sued by someone that is over 50, a minority, and female."  *Id.*

Fletcher did not tell White that the December 10 meeting was a "verbal warning."  *Id.* ¶ 30.  On December 13, Fletcher gave White a written warning for "not living up to expectations."  *Id.* ¶ 29.

White applied for a management position in Coventry's Provider Relations Department and applied for several other positions within Coventry.  *Id.* ¶¶ 25, 75, 85, 94. [5]   Coventry did not interview White for any of the positions for which she applied.  *Id.* ¶¶ 77, 87, 96.  Coventry continued to seek applicants for the positions.  *Id.* ¶¶ 78, 85, 96.  White spoke with "other employees" who said that "there had been no 'qualified candidates.'"  *Id.* ¶ 26.

Defendant Jennifer Hatchett, who was "formerly a director and Plaintiff's supervisor, but currently in a new position due to a promotion," "constantly berated" White.  *Id.*  After White resigned, she learned of other complaints against Hatchett.  *Id.* ¶ 36.  Defendant Patrick Murray was White's "supervisor."  *Id.* ¶ 32.  Either Hatchett or Murray accused White of "not knowing her job." *Id.* ¶ 34.

White complained to Defendant Belinda Lonergran, an HR representative, about the treatment she received.  *Id.* ¶ 35.  Lonergran did not investigate the allegations.  *Id.* ¶ 55.  White also complained of Hatchett's treatment of her to Defendant Deborah Pennington.  *Id.* ¶ 39. [6]  Pennington told White to file an HR complaint, which she did.  *Id.* ¶ 39.

On December 19, Pennington "cursed at [White] repeatedly" on a conference call for submitting reports with missing Provider Medicaid ID numbers.  *Id.* ¶ 38.   Defendant Lisa

---

[5] It is unclear if White applied for any of these positions before or after Fletcher told her to do it before she was "written up."  *Id.* ¶ 25.

[6] The complaint does not list Pennington's title, job description, or position within Coventry.

Chandler, a CFO at Coventry, did not correct Pennington's "rude and unprofessional behavior." *Id.* ¶ 37.

Mike Montgomery, whom the complaint describes as White's "Caucasian male counterpart," was rarely present at mandatory meetings. *Id.* ¶ 42. White was criticized for not knowing answers about Montgomery's areas of responsibility. *Id.* ¶ 43. Montgomery was never reprimanded. *Id.* ¶ 44.

Chandler terminated David Parrish, along with other employees, "for not knowing answers to questions they were not responsible for knowing," *Id.* ¶ 45 – 46. Additionally, "holding people responsible for projects they were not assigned was a typical practice of Defendant Coventry, and Defendant Chandler individually." *Id.* ¶ 45. Parrish warned White to leave Coventry because Chandler "is ruthless and holds a grudge." *Id.* ¶ 47.

On January 11, 2013, Murray "degraded and humiliated" White and told her "she had lost her credibility and had an attitude of irresponsibility." *Id.* ¶ 49. That same day, Fletcher issued a thirty-day extension of White's written warning. *Id.* ¶ 53.

At some point, White's doctor diagnosed her with severe depression "stemming from her traumatic work situation" and recommended she leave Coventry. *Id.* ¶ 50 – 51.

On January 21, White submitted a letter of resignation. *Id.* ¶ 53.

On January 22, Murray began holding daily meetings with White's staff, and "served to strip all of Plaintiff's authority regarding decision-making as to who would be assigned to what project, and the prioritization of projects." *Id.* ¶ 49.

After she submitted the letter of resignation, HR representatives told White, "We don't want you to work in a hostile work environment; please work at home for the remainder of your employment." *Id.* ¶ 55. It is unclear what was White's last day.

White's amended complaint includes eight claims.  The first claim alleges workers' compensation retaliation against Coventry.  *Id.* at 11 – 13.  The second, third, and fourth claims allege race, gender, and age discrimination against Coventry.  *Id.* at 13 – 17.  The fifth, sixth, and seventh claims[7] allege retaliation for filing discrimination complaints against the Coventry Defendants, Lonergran, and Murray.  *Id.* at 17 – 18.  The eighth claim alleges promissory estoppel against Coventry.  *Id.* at 20 – 21.  The Coventry Defendants moved to dismiss all claims.

The Court will address the discrimination claims first, the workers' compensation retaliation claim second, the discrimination retaliation claims third, and the promissory estoppel claim fourth.

## IV.   **White's Discrimination Claims**

The Kentucky Civil Rights Act prohibits an employer from refusing to hire an individual because of the individual's race, gender, or age over forty.   KRS § 344.040.   Kentucky courts interpret the Kentucky Civil Rights Act consistent with Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.  *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).

### A.  **White's discrimination claims for failure to promote**

A prima facie case of discrimination for failure to promote[8] requires the plaintiff show:

---

[7] The complaint lists White's claim for retaliation based on filing a gender discrimination complaint and retaliation based on filing an age discrimination complaint both as "count six." *Id.* 18 – 19.  The Court refers to White's gender retaliation complaint as the "sixth claim;" White's age retaliation complaint as the "seventh claim;" and White's promissory estoppel claim as the "eighth claim."

[8] The Sixth Circuit modified the prima facie employment discrimination elements to fit the failure to promote context.  *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

> (1)     membership in a protected class; (2) application for and qualification for a
> promotion; (3) the employer considered the plaintiff and denied the promotion;
> and (4) similarly qualified individuals not in the protected class received
> promotions at the same time the employer denied the plaintiff's promotion.

*Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 879 (6th Cir. 2013) (gender discrimination

elements); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (racial discrimination

elements); *see Flock v. Brown-Forman Corp.,* 344 S.W.3d 111, 114 (Ky. Ct. App. 2010) (similar

elements for age discrimination).

The plaintiff must establish that "she and the non-protected person who ultimately was

hired for the desired position had similar qualifications." *White v. Columbus Metro. Hous. Auth.*,

429 F.3d 232, 242 (6th Cir. 2005).  For an age discrimination claim, the plaintiff must prove that

the employer hired someone "substantially younger" than the plaintiff. *O'Connor v. Consol.*

*Coin Caterers Corp.*, 517 U.S. 308, 312 – 13 (1996).

For the first element, the complaint alleged sufficient facts to establish White's

membership in a protected class because she is a woman, native Hawaiian, and over the age of

forty.  *See* Am. Compl. ¶ 16.

For the second element, the complaint alleged sufficient facts to establish that White

applied for a promotion because White applied for "positions" within Coventry.  *See id.* ¶¶ 75,

85, 94.  Specifically, she applied for a management position in the Provider Relations

Department.  *Id.*  ¶ 25.  The complaint does not identify the titles of the other positions, or posted

qualifications for either the Provider Relations management position or any other position.  Still,

the complaint does not allege sufficient facts to suggest White's qualification for a promotion.

The complaint says only that White had "significant experience," *id.*  ¶ 26, and "was more than a

'qualified' candidate for any of the positions she applied for." *Id.* ¶¶ 76, 86, 95.  These "naked

assertion[s]," without "further factual enhancement," *Iqbal*, 556 U.S. at 678, do not suffice to suggest White's qualification for the Provider Relations manager position or any other position.

For the third element, the complaint alleged sufficient facts to establish that Coventry denied the promotion because White "was not even interviewed, let alone selected, for any of these open positions." *See id.* ¶ 76.  Still, the complaint does not allege sufficient facts to suggest that Coventry considered White for a promotion.  Although "several other employees" said "there had been no 'qualified candidates,'" *see id.* ¶ 26, the complaint does not identify these other employees, nor does the complaint say whether they were on the hiring committee or one of White's supervisors.

For the fourth element, the complaint alleges no facts to suggest that a similarly qualified individual outside White's protected class received the Provider Relations manager position or any other position for which White applied.  The complaint does not allege any fact to suggest that Coventry filled any of the positions, much less filled the position with someone similarly qualified to White who was not a woman, native Hawaiian, or substantially younger than her.

Thus, White's discrimination claims for failure to promote do not state claims to relief that are plausible on their face.  The Court will grant Coventry's motion to dismiss the discrimination claims for failure to promote.

### B.  White's hostile work environment discrimination claims

A prima facie case of hostile work environment discrimination requires the plaintiff show:

> (1) membership in a protected class, (2) he/she was subjected to unwelcome [sexual, racial, or age] harassment, (3) the harassment was based on the plaintiff's membership in the protected class, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable.

10

*Clay v. United Parcel Serv.*, 501 F.3d 695, 706 (6th Cir. 2007) (racial discrimination hostile

work environment); *Warf*, 713 F.3d at 878 (6th Cir. 2013) (sexual discrimination hostile work

environment); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 – 35 (6th Cir. 1996) (age

discrimination hostile work environment).[9]

    "'Hostile work environment' is a term of art, which refers to an unlawful employment

practice under Title VII that arises because of 'discriminatory intimidation, ridicule, and

insult[s]' *repeatedly directed at an employee on the basis of a protected characteristic*." *Yazdian*

*v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. July 14, 2015) (brackets in

original, internal quotation marks and citations omitted) (emphasis added).  The discriminatory

intimidation, ridicule and insult must be "sufficiently severe or pervasive to alter the conditions

of the victim's employment and create an abusive working environment." *Ammerman v. Bd. of*

*Educ. of Nicholas Cty.*, 30 S.W.3d 793, 798 (Ky. 2000).  "Mere isolated utterances," do not give

rise to a hostile work environment claim.  *Clay*, 501 F.3d at 708.

    For the first element, White is a member of a protected class.  *See* discussion *supra* Part

IV(A).

    For the second element, the complaint does not allege sufficient facts to suggest that

White was subjected to unwelcome sexual, racial, or age-based harassment.  The lone instance of

intimidation, ridicule, or insult in the complaint that hints of racial, gender, or age discrimination

is Fletcher's statement to White: "We can't fire you.  The company (Defendant Coventry) is

afraid of being sued by someone that is over 50, a minority, and female."  Am. Compl. ¶¶ 79, 89,

98.  This mere isolated utterance, absent more, cannot give rise to a hostile work environment

claim.  *See Clay* 501 F.3d at 708.

---

[9] White's response does not address the Coventry Defendants' motion to dismiss the hostile work environment claims.

For the third element, the complaint does not allege sufficient facts to suggest that the harassment was based on White's race, gender, or age.  Assuming that White's allegation that Hatchett "constantly berated" her, Am. Compl. ¶ 32, is true, the complaint alleges no facts to suggest that Hatchett "constantly berated" White on the basis of White's race, gender, or age. Assuming that White's allegation that Pennington "cursed at [her] repeatedly" during a conference call, *id.* ¶ 37, is true, the complaint alleges no facts to suggest that Pennington's repeated cursing was on the basis of White's race, gender, or age.

For the fourth element, the complaint does not allege sufficient facts to suggest that the racial, sexual, or age-based harassment created a hostile work environment.  The complaint says, "That almost from the very beginning of Plaintiff's employment she suffered from harassment, discrimination, intimidation, berating, and a hostile work environment perpetrated by Defendant Coventry, and the individually named Defendants."  *Id.* ¶ 20.  This statement is a legal conclusion for which the Court owes no deference.  *See Twombly*, 550 U.S. at 555.  Although the complaint describes "lack of communication," *id.* ¶ 22, "inconsistency of expectations," *id.* ¶ 33, a "confusing environment," *id.*, and a "toxic situation," *id.* ¶ 40, these are insufficient "naked assertion[s]" without "further factual enhancement." *Iqbal*, 556 U.S. at 678.  The complaint alleges no facts to suggest that *discriminatory* intimidation, ridicule, and insult were "repeatedly directed" at White on the basis of her race, gender, or age.

For the fifth element, the complaint does not allege sufficient facts to suggest vicarious liability.  The complaint says only, "That Defendant Coventry, through Defendant Chandler, Defendant Pennington, Defendant Hatchett, Defendant [Lonergran], and Defendant Murray, subjected Plaintiff to intimidation, discrimination, verbal assaults, a hostile work environment, and created different work standards for Plaintiff due to Plaintiff's [race, gender, and age] in

violation of KRS § 344.040." Am. Compl. ¶¶ 74, 84, 93.  This Court does not accept such legal

conclusions couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

Thus, White's hostile work environment discrimination claims fail to state claims to

relief that are plausible on their face.  The Court will grant the Coventry's motion to dismiss the

hostile work environment claims.

### C.  White's disparate treatment discrimination claims

A prima facie case of disparate treatment discrimination requires the plaintiff show:

> (1)     membership in a protected class; (2) an adverse employment action; (3)
> qualification for the position; and (4) that a comparable person outside the
> protected class was treated more favorably than the plaintiff.

*Clay*, 501 F.3d at 703 (racial discrimination); *Murray v. E. Ky. Univ.*, 328 S.W.3d 679, 682 (Ky.

Ct. App. 2009) (gender discrimination); *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317

(6th Cir. 2007) (age discrimination).

An adverse employment action is a materially adverse change in the terms or conditions

of employment.  *Kuhn v. Washtenaw Cty.,* 709 F.3d 612, 625 (6th Cir. 2013).[10]  Examples of

adverse employment actions include: "a termination of employment, a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices that might be unique to a particular

situation."  *Id.* at 625.  An adverse employment action must be "more disruptive than a mere

inconvenience or an alteration of job responsibilities."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d

177, 182 (6th Cir. 2004).  "A written reprimand, without evidence that it led to a materially

adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially

---

[10] The definition of "materially adverse employment action" in a discrimination claim
differs from the standard of a "materially adverse employment action" in a retaliation claim.  *See*
*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (discussing
*Burlington N. & Santa Fe R. Co. v. White*, 548 U.S. 53, 57 (2006)).

adverse employment action." *Creggett v. Jefferson Cty. Bd. of Educ.*, 491 F. App'x 561, 566

(6th Cir. 2012) (citing *Lahar v. Oakland Cty.*, 304 F. App'x 354, 357 – 58 (6th Cir. 2008)).

Additionally, the plaintiff must show that the comparable employee outside the plaintiff's

protected status is "similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d at 583

(italics in original).

   For the first element, White is a member of a protected class. *See* discussion *supra* Part

IV(A).

   For the second element, the complaint does not allege sufficient facts to suggest that

White suffered an adverse employment action. White's response points to "numerous adverse

employment actions, including (but not limited to): 1) significantly diminished material

responsibilities by Defendant Murray; 2) reassignment to work under a younger supervisor in

Defendant Murray; and 3) badgering, harassment, or humiliation by Defendant Coventry, and

ultimately her constructive discharge." Pl.'s Resp. Defs.' Mot. Dismiss 12, ECF No. 21. The

third example is a legal conclusion for which this Court owes no deference. *See Twombly*, 550

U.S. at 555.

   While significantly diminished material responsibilities and reassignment can amount to

adverse employment actions, the complaint does not allege sufficient facts to suggest that

Coventry took adverse employment action against White. Although Murray held daily meetings

which "served to strip all of Plaintiff's authority regarding decision-making as to who would be

assigned to what project, and the prioritization of projects," Am. Compl. ¶ 49, the daily meetings

began one day after White submitted her letter of resignation. *See id.* ¶ 49, 53. The Court fails

to see how these actions can be deemed "adverse" when they occurred after White told Coventry

she was leaving. The complaint does not say what kind of projects were reassigned; how they

were reassigned; to whom the projects were reassigned; how prioritization was handled before the daily meetings began; how the project prioritization changed as a result of the daily meetings; or offer any other facts to suggest how this change was "more disruptive than a mere alteration of job responsibilities." *See Mitchell v. Vanderbilt Univ.*, 389 F.3d at 182.

For the third element, the complaint alleged sufficient facts to establish White's qualification for her current position because she "was selected for the Network Operations Manager position based on her knowledge and experience with Carelink's Medicaid health plan benefits." Am. Compl. ¶ 19.

For the fourth element, the complaint fails to state sufficient facts to allege that similarly-situated employees outside of White's protected status were treated more favorably. The only specific example the complaint alleges regarding disparate treatment for missing meetings is the September 28, 2012 email in which Chandler "chastis[ed] her for missing a meeting." *Id.* ¶ 21. This "written reprimand," without more, is not a materially adverse consequence. *See Creggett*, 491 F. App'x at 566. While the complaint does say that White's white male "counterpart," younger employees, and non-minority employees did not receive emails for missing meetings, *id.* ¶ 21, the complaint does not identify these individuals, nor does the complaint offer any facts to suggest that the individuals were "similarly-situated in all respects." *See Mitchell v. Toledo Hosp.*, 964 F.2d at 583.

The complaint says that Mike Montgomery was never reprimanded for missing meetings and "never reprimanded for any of his actions." Am. Compl. ¶¶ 43, 44. Still, the complaint describes Mr. Montgomery only as White's "Caucasian male counterpart," and offers no facts as to suggest that he was "similarly-situated" to White "in all respects." *See Mitchell v. Toledo Hosp.*, 964 F.2d at 583. The complaint offers no facts as to Montgomery's title, the name of his

15

department, how many employees answered to him, or the nature of the questions White answered in the meetings.  In the very next paragraph, the complaint says, "blaming others for not knowing answers to questions they were not responsible for knowing, and holding people responsible for projects they were not assigned was a typical practice of Defendant Coventry and Defendant Chandler individually."  *Id.* ¶ 45.   As the Coventry Defendants point out, "by her own allegations, Plaintiff was not singled out or treated differently than others with regard to the alleged conduct."  Defs.' Mem. Supp. Mot. Dismiss 9, ECF No. 14-1.

 Thus, White's disparate treatment claims fail to state claims to relief that are plausible on their face.  The Court will grant the Coventry Defendants' motion to dismiss the disparate treatment claims.

### D.  White's constructive discharge claim

The complaint does not list "constructive discharge" as a specific count, nor do the words "constructive discharge" appear anywhere in the complaint.  *See* Am. Compl. 11 – 21.  White does use the words "forced resignation," *id.* ¶ 36, "coerced resignation," *id.* ¶¶ 80, 90, 99, and says she "became the victim of additional attempts to force her to resign."  *Id.* ¶ 23.  The Coventry Defendants moved to dismiss White's constructive discharge claim.  Mem. Supp. Defs.' Mot. Dismiss 14, ECF No. 14-1.

For a hostile work environment constructive discharge claim, the plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).  Constructive discharge is an "aggravated" case of hostile work environment and requires "something more" than a hostile work environment claim.  *Suders*, 542 U.S. at 146 – 47.

Here, the complaint does not allege sufficient facts to state a plausible claim to relief for constructive discharge.  White's complaint fails to state a claim to relief for hostile work environment.  *See* discussion *supra* Part IV(B).  White would have to allege "aggravating" factors, or "something more" beyond a hostile work environment claim to prevail on a claim of constructive discharge.  *See Suders*, 542 U.S. at 146 – 47.  Because the complaint fails to state plausible claims to relief for hostile work environment discrimination, the complaint also fails to state plausible claims to relief for constructive discharge.

Thus, White's constructive discharge claims fail to state claims to relief that are plausible on their face.  The Court will grant the Coventry Defendants' motion to dismiss the constructive discharge claims.

## V.     White's Retaliation Claims

### A.   White's Claim for Workers' Compensation Retaliation

A prima facie case of workers' compensation retaliation requires the plaintiff to show:

(1) engagement in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) the employer took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.

*Harris v. Burger King Corp.*, 993 F.Supp.2d 677, 687 – 88 (W.D. Ky. 2014); *Hackworth v. Guyan Heavy Equip., Inc.*, 613 F.Supp. 2d 908, 915 (E.D. Ky. 2009); *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910 (Ky. Ct. App. 2006).

Kentucky courts use discrimination retaliation standards to determine whether an employer took adverse employment action against a plaintiff who files a Workers' Compensation claim.  *Compare*, *Upchurch*, 214 S.W.3d at 915 (elements of prima facie case for workers' compensation retaliation); *with*, *Brooks v. Lexington-Fayette Urban Hous. Auth.*, 132 S.W.3d 790, 802 (Ky. 2004) (same elements applied to racial discrimination retaliation claim).  In

*Brooks*, the Kentucky Supreme Court cited *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) for the proposition that adverse employment action in a retaliation case is a "materially adverse change in the terms and conditions of his employment." *Brooks*, 132 S.W.3d at 802.

However, in *White*, the Supreme Court held that an adverse employment action under Title VII requires a plaintiff to show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotation marks omitted). The opinion in *White* rejected the "materially adverse change in the terms and conditions of employment" standard the Sixth Circuit previously recognized in favor of the "reasonable person" judging the nature of the retaliatory act. *Cf. White*, 548 U.S. at 60.

For the first element, the complaint alleged sufficient facts to establish that she engaged in a protected activity because she filed a Workers' Compensation complaint on October 23, 2012. *See* Am. Compl. ¶ 23.

For the second element, White alleged sufficient facts to establish that Coventry knew she filed a Workers' Compensation claim because "Defendant Coventry was aware of the Workers' Compensation claim filed by Plaintiff." *See id.* ¶ 62.

For the third element, the complaint does not allege sufficient facts to suggest that Coventry took an adverse employment action against White. While the daily meetings "served to strip all of Plaintiff's authority regarding decision-making as to who would be assigned to what project, and the prioritization of projects," *id.* ¶ 49, the complaint does not offer any facts to describe the changes. *See* discussion *supra* Part IV(C). The complaint also does not offer any

18

other facts to suggest that a reasonable person would be dissuaded from making or supporting a charge of workers' compensation discrimination based on the daily meetings that three months after White filed the workers' compensation claim. *Cf. White*, 548 U.S. at 60.

For the fourth element, the complaint does not allege sufficient facts to suggest a causal connection between White's filing of a workers' compensation claim and an adverse employment action. White filed the workers' compensation claim on October 23, 2012. Am. Compl. ¶ 22. The daily meetings that stripped White of decision-making and prioritization authority began on January 22, 2013 after White submitted a letter of resignation on January 21, 2013. *See* discussion *infra* Part IV(C). The complaint fails to establish a causal connection between White's workers' compensation claim and White's diminished responsibilities three months later, which by the complaint's own timeline, only went into effect the day after she submitted her resignation.

Thus, White's workers' compensation retaliation claim fails to state a claim to relief that is plausible on its face. The Court will grant Coventry's motion to dismiss the workers' compensation retaliation claim.

### B. White's Other Retaliation Claims

A prima facie case of retaliation requires the plaintiff show

> (1) engagement in activity protected by Title VII; (2) the defendant knew of the plaintiff's exercise of civil rights; (3) the defendant took adverse employment action against the employee; or a supervisor subjected the plaintiff to pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the adverse employment action.

*Warf*, 713 F.3d at 880 (gender discrimination retaliation); *Michael.* 496 F.3d at 595 (racial discrimination retaliation); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 – 92 (6th Cir. 2010) (age discrimination retaliation).

An adverse employment action occurs when "the employer's actions (are) harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57.  As for the causal connection element, the plaintiff must prove the protected activity was the but-for cause of the adverse employment action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013).

For the first element, the complaint does not allege sufficient facts to suggest that White engaged in an activity protected by Title VII.  The complaint says: "The Plaintiff continued to complain about the hostile work environment [but] received no response," Am. Compl. ¶ 34; that "Plaintiff had previously complained to Defendant [Lonergran], an HR representative, about the hostile work environment," *id.* ¶ 35; and that "Plaintiff engaged in discussions with Defendant Pennington about the hostile work environment created by Defendant Hatchett." *Id.* ¶ 39.  The complaint does not say whether White complained to Lonergran via email, in person, or by filing a written complaint; when White contacted Lonergran; or the content of the complaints.  The complaint does not say when White discussed "the hostile work environment created by Hatchett," *id.* ¶ 39, with Pennington, nor does it say whether White told either Pennington or Lonergran that she believed the treatment she received was because of her race, gender, or age.

For the second element, the complaint alleged sufficient facts to establish that Pennington knew White had complained about the treatment she received because White "engaged in discussions with Defendant Pennington about the hostile work environment created by Defendant Hatchett." *Id.* ¶ 39.  However, the complaint alleges no facts to suggest that Chandler or Hatchett knew White had complained about the "hostile work environment."

For the third element, the complaint does not allege sufficient facts to suggest that Coventry took an adverse employment action against White.  *See* discussion *supra* Part IV(C).

20

For the fourth element, the complaint does not allege sufficient facts to suggest that the protected activity was the but-for cause of the adverse employment action.  The complaint itself says that that the Defendants' "retaliatory acts were *at least partially caused* by Plaintiff's opposition to the discriminatory treatment she suffered from based on her [race, gender, and age]." Am. Compl. ¶¶ 104, 110, 116 (emphasis added).  Additionally, the complaint does not allege sufficient facts to suggest a causal connection exists between White's complaints of discrimination and her diminished responsibilities which took effect after she tendered a letter of resignation.  *See* discussion *supra* V(A).

Thus, White's other retaliation claims fail to state claims to relief that are plausible on their face.  The Court will grant the Coventry Defendants' motion to dismiss the other retaliation claims.

## VI.  <u>White's Promissory Estoppel Claim</u>

Under Kentucky law, a promissory estoppel claim has the following elements:

(1) A promise (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and (3) which does induce such action or forbearance is binding (4) if injustice can be avoided only by enforcement of the promise.

*Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009).

For the first element, the complaint alleges sufficient facts to establish that Coventry made a promise to White because Coventry policy "mandates an employee receive a verbal warning before a written warning can be issued, and has anti-discrimination and retaliation policies." Am. Compl. ¶ 120.

For the second element, the complaint fails to state any facts to suggest that Coventry should have reasonably expected White to rely on the verbal warning policy in continuing to remain an employee at Coventry.  The complaint only says: "That Defendant Coventry should

21

have reasonably expected the Plaintiff to rely on its promises." *Id.* ¶ 124.  This "formulaic recitation of the elements of a cause of action will not do."  *See Twombly*, 550 U.S. at 555.

For the third element, the complaint does not allege any facts to suggest that Coventry's promise induced White to act or forbear.  The complaint only says: "That Plaintiff, to her detriment, relied on the promises made by Defendant Coventry."  Am. Compl. ¶ 123.  The complaint states no facts to suggest that White continued her employment at Coventry, turned down a lucrative job offer, or decided not to move departments because Coventry promised to provide a verbal warning before a written warning.

For the fourth element, the complaint does not state any facts to suggest that injustice can be avoided only by enforcing Coventry's promise.  The complaint only says, "That due to Defendant Coventry's failure to honor [its] obligations to Plaintiff, Plaintiff has and will continue to suffer damages in the form of lost wages, benefits, and pain and suffering, and Plaintiff should be made whole."  *Id.* ¶ 125.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Thus, White's promissory estoppel claim fails to state a claim to relief that is plausible on its face.  The Court will grant Coventry's motion to dismiss the promissory estoppel claim.

## VII.   <u>Conclusion</u>

The Court will grant White's second motion for extension of time and deny White's first motion for extension of time as moot.

The Court will grant the Coventry Defendants' motion to dismiss all claims.

An order in conformity with this opinion will be entered this date.

October 30, 2015



**Charles R. Simpson III, Senior Judge**
**United States District Court**